UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAVID Q WEBB,<br><br>            Plaintiff,<br><br>   v.<br><br>NAPHCARE INC,<br><br>            Defendant. | Case No. 3:21-cv-05761-TMC<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR VOLUNTARY DISMISAL AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I.  INTRODUCTION

Before the Court is pro se Plaintiff David Q. Webb's motion titled as a stipulated voluntary dismissal (Dkt. 87) and Defendant NaphCare Inc.'s motion for summary judgment (Dkt. 88). Mr. Webb brings a claim for deliberate indifference to a serious medical need under 42 U.S.C. § 1983, based on NaphCare's alleged failure to provide timely medical care while Mr. Webb was detained at the Kitsap County Jail. For the following reasons, the Court DENIES Mr. Webb's motion and GRANTS NaphCare's motion.

## II.  BACKGROUND[1]

---

[1] The facts recited in this section are based on the documents submitted with the Declaration of Ross C. Taylor in support of NaphCare's motion for summary judgment, construing the evidence in the light most favorable to Mr. Webb. Dkt. 89. NaphCare's motion references documents that

**ORDER DENYING PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1**

NaphCare is the service provider contracted by the Kitsap County Jail to provide medical care in the facility. Dkt. 76 ¶ 2. On March 29, 2019, Mr. Webb was booked into the Kitsap County Jail as a pretrial detainee and underwent medical screening. Dkt. 76 ¶ 1; Dkt. 89-1 at 5–6. During the screening, Mr. Webb denied having any dental pain or concerns as well as any acute or chronic care conditions. *Id.* at 6. In May 2019, Mr. Webb began periodically refusing meals, and the medical staff tried to administer mental and physical assessments. *See id.* at 4, 8–9. Mr. Webb declined the evaluations, informing staff that he was "fine" and "[did] not want any medical services at this time." *Id.* Later that month, he resumed eating his meals and the medical notes stated that he appeared to be of "good physical health with no concerns at this time." *Id.* at 10. The next month, Mr. Webb made a sick call because of what he described as an eczema flare up on his left arm. *Id.* at 4. When a medical nurse attempted to evaluate the eczema four days later, Webb refused to be seen. *Id.*

On September 11, 2019, Mr. Webb submitted a sick call request seeking a back tooth extraction and an eye exam for glasses. *Id.* at 11. He explained that he had scheduled a tooth extraction earlier in March before he was detained, and that the "pain is unbearable and can no longer be ignored." *Id*. He also asked medical staff to contact his dentist, Dr. Connors, as soon as possible. *Id.* Mr. Webb refused a medical nurse from seeing him two days later but submitted another sick call request on September 15. *Id.* at 4, 12, 13. The second request repeated the same needs for a tooth extraction and eye exam. *Id.* at 13. On September 17, 2019, a nurse contacted Dr. Connors to obtain Mr. Webb's dental records and Mr. Webb was seen by a nurse practitioner who prescribed Acetaminophen after noting severe tooth decay. *Id.* at 15, 17. A progress note dated September 24, 2024, stated that Mr. Webb was referred for a dental extraction. *Id.* at 4, 18.

appear to be missing from Mr. Taylor's declaration; the Court has not relied on those unsupported statements, and they are not material to the outcome of the motion.

**ORDER DENYING PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2**

On September 28, 2019, Mr. Webb contacted medical staff requesting hydrocortisone cream and band aids for eczema that had broken out on his right elbow. *Id.* at 4, 19. The next day, a nurse evaluated Mr. Webb and prescribed hydrocortisone cream after determining his eczema was a chronic condition. *Id.* at 20. About two weeks later, Mr. Webb submitted another sick-call request, explaining that his "eczema has not fully healed" and that he is "still waiting for teeth extraction" and was in "extreme pain now for six (6) weeks." *Id.* at 21.

Mr. Webb's tooth extraction was completed on October 22, 2019. Dkt. 76 ¶ 4. His skin condition, however, persisted and he was seen by a nurse practitioner who prescribed him antibiotics. Dkt. 89-1 at 22. The symptoms continued after Mr. Webb completed antibiotic treatment and medical staff believed that the cause might be a yeast infection. *Id.* at 22. They ordered Fluconozole, an anti-fungal medication, and sent cultures of the affected area to a lab to be tested. *Id.* By this time, on or around February 2, 2020, Mr. Webb was released from custody. *Id.* at 26, 30. The lab results arrived positive for methicillin resistant staph aureus ("MRSA") and the jail contacted Mr. Webb and advised him to see his primary care doctor. *Id.* at 27–28.

Mr. Webb filed this action on October 12, 2021. Dkt. 1. The Court dismissed Webb's complaint without prejudice and granted leave to amend. Dkt. 74. The Court appointed Mr. Webb pro bono counsel for the limited purpose of completing service of process and drafting an amended complaint. Dkt. 75. On December 6, 2023, Mr. Webb filed the amended complaint and NaphCare answered. Dkt. 76; Dkt. 82. After the close of discovery, on September 27, 2024, Mr. Webb filed a motion purportedly seeking voluntary dismissal without prejudice, and NaphCare responded. Dkt. 87; Dkt. 91. NaphCare then moved for summary judgment and while Mr. Webb did not file a response, NaphCare replied. Dkt. 88; Dkt. 92. Both motions are ripe for the Court's consideration.

### III.     DISCUSSION

**A.     Mr. Webb's Motion for Voluntary Dismissal**

Mr. Webb's motion asks the Court to dismiss his case without prejudice based on his mistaken belief that the statute of limitations for his claim has been tolled while this litigation is ongoing. *See* Dkt. 87. He asks the Court to dismiss the case so that he may refile in the future, "which would afford pro se Plaintiff Webb to become gainfully employed professionally and hire a competent attorney to properly subpoena Dr. Taseva, M.D., and question her properly at the civil jury trial about her medical treatment of pro se Plaintiff Webb from 03 February 2020 through August 2020." *Id.* at 3.

Since "42 U.S.C. § 1983 does not contain its own statute of limitations" the Court applies "the statute of limitations for an analogous cause of action under Washington state law." *Bagley v. CMC Real Est. Corp.*, 923 F.2d 758, 760 (9th Cir. 1991). A three-year statute of limitations applies in Washington. *Id.* (citing RCW 4.16.080(2)). Mr. Webb's delayed tooth extraction took place in October 2019, more than five years ago. While Mr. Webb filed his lawsuit within the three-year statute of limitations, if he were to dismiss his claims now, the time would be expired.

Mr. Webb's motion for voluntary dismissal asserts that the statute of limitations was tolled when he filed this action. Dkt. 87 at 1. This is not a correct statement of Washington law. For actions under Section 1983, federal courts apply "the forum state's law regarding tolling, including equitable tolling." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). In *Fowler v. Guerin*, the Washington Supreme Court set out the general standards for equitable tolling in civil cases under Washington law:

> A plaintiff seeking equitable tolling of the statute of limitations in a civil suit must demonstrate that such extraordinary relief is warranted because (1) the plaintiff has exercised diligence, (2) the defendant's bad faith, false assurances, or deception interfered with the plaintiff's timely filing, (3) tolling is consistent with (a) the

purpose of the underlying statute and (b) the purpose of the statute of limitations, and (4) justice requires tolling the statute of limitations.

200 Wn.2d 110, 125, 515 P.3d 502 (2022). In *Campeau v. Yakima HMA, LLC*, the Washington Supreme Court clarified "that equitable tolling may be appropriate, even in the absence of bad faith, where associational standing fails, an association's member files a follow-on class action, and all of the other elements of equitable tolling have been met." 3 Wn.3d 339, 348, 551 P.3d 1037 (2024).

Here, Mr. Webb has not shown that he would be entitled to equitable tolling under either standard. Mr. Webb also erroneously represented that his motion for voluntary dismissal is stipulated. Dkt. 87. NaphCare responds that Mr. Webb "did not confer with NaphCare, nor secure NaphCare's agreement as required by Fed. R. Civ. P. 41(a)(1)(A)(ii)." Dkt. 91 at 1. Nevertheless, "[p]rovided Plaintiff understands that voluntary dismissal is completely dispositive of his claim—although procedurally abnormal—NaphCare will now so stipulate." *Id.* at 3. The Court, however, will not grant Mr. Webb's motion when it is expressly predicated on an incorrect belief that he can refile in the future. *See* Dkt. 87 at 1. Since Mr. Webb's motion appears conditioned on his mistaken understanding of the statute of limitations, the Court DENIES the motion for voluntary dismissal and will move on to considering the merits of NaphCare's summary judgment motion.

**B.     Summary Judgment Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)). The moving party has the initial burden of "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323.

Generally, "'[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. Thus, at summary judgment, the court must resolve "factual issues of controversy in favor of the non-moving party[.]" *Lujan,* 497 U.S. at 888 (internal quotations omitted).

C.     **NaphCare's Summary Judgment Motion**

"Individuals in state custody have a constitutional right to adequate medical treatment." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976)). For pretrial detainees like Mr. Webb, who have not yet been convicted of a crime, their rights arise under the Due Process Clause of the Fourteenth Amendment. *See id*; Dkt. 76 ¶ 13. For a pretrial detainee to prove that a defendant violated his constitutional right to adequate medical treatment while in custody, he must show "objective deliberate indifference." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018) (*Gordon I*); *Sandoval*, 985 F.3d at 669. This requires proof that (1) the defendant made an

ORDER DENYING PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

intentional decision with respect to the plaintiff's conditions of confinement, including a decision about medical treatment; (2) those conditions put the plaintiff at substantial risk of serious harm; (3) the defendant did not take reasonable measures to abate that risk, even though the consequences of doing so were obvious and a reasonable official would have appreciated the risk; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Sandoval*, 985 F.3d at 669. The third element "requires a showing of more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (internal quotation marks and citation omitted).

Mr. Webb asserts that NaphCare demonstrated deliberate indifference to his serious medical need when it delayed scheduling his tooth extraction, which he alleges caused severe pain and resulted in a staph infection. Dkt. 76 ¶¶ 20, 24; *see Estelle*, 429 U.S. at 103. Because NaphCare is an entity, rather than an individual, it may be held liable under Section 1983 only through a *Monell* theory as though it were a municipal defendant. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138–39 (9th Cir. 2012); *Estate of Hill by and through Grube v. NaphCare, Inc.*, No. 2:20-cv-00410-MKD, 2023 WL 6297483, at *6–7 (E.D. Wash. Sept. 27, 2023). "A *Monell* plaintiff must demonstrate that 'an official policy, custom, or pattern' on the part of the municipal defendant 'was the actionable cause of the claimed injury.'" *Estate of Hill by and through Grube*, 2023 WL 6297483, at *6 (quoting *Tsao*, 698 F.3d at 1143).

NaphCare offers three arguments for why a reasonable jury could not find in Mr. Webb's favor and it is therefore entitled to summary judgment. Dkt. 88 at 9–12. First, NaphCare argues that Mr. Webb cannot show a deprivation of a constitutional right. *Id.* at 9–10. Second, NaphCare contends that Mr. Webb has no evidence to demonstrate that the alleged violations were caused by a policy or custom. *Id.* at 10–11. Third, NaphCare argues that Mr. Webb cannot

ORDER DENYING PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

show that there was "an affirmative link between a defendant's alleged deliberate indifference and the claimed constitutional deprivation." *Id.* at 11. The Court addresses only NaphCare's second argument because that alone is dispositive.

"A policy sufficient to hold an entity defendant liable under *Monell*" can be established in three ways: (1) "where the entity acts pursuant to an expressly adopted official policy"; (2) "where a longstanding practice or custom causes a constitutional injury, including where the defendant fails to implement procedural safeguards to prevent constitutional violations or, sometimes, when it fails to train its employees adequately"; and (3) "where the constitutional tortfeasor is an official with final law-making authority or where that official ratified a subordinate's unconstitutional act." *Estate of Hill by and through Grube*, 2023 WL 6297483, at *6 (internal quotation marks and citations omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) (*Gordon II*) (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

Mr. Webb alleged that NaphCare had a policy or practice of "treating emergency medical care in the same manner as it treated routine medical care, resulting in pretrial detainees having to wait for weeks or sometimes months to receive medical treatment that should have been provided on an emergency basis." Dkt. 76 ¶ 21. Mr. Webb asserted that, as a result, NaphCare waited weeks before scheduling his offsite dental appointment, even though medical staff were aware that his tooth pain required immediate extraction. *Id.* ¶ 22. Mr. Webb further alleged "[he] is aware of more than one pretrial detainee who, during [Webb's] pretrial detention, broke bones at the Kitsap County Sheriff's Office Jail." *Id.* ¶ 23. "Though broken bones would typically constitute a medical emergency, those individuals were forced to wait seven to ten days before

Defendant NaphCare scheduled them to receive medical treatment offsite." *Id.* NaphCare counters that Mr. Webb cannot prove the existence of an unconstitutional policy or custom because he "lacks any evidence of some widespread, permanent and default practice." Dkt. 88 at 10.

Although his allegations stated a plausible *Monell* claim, at the summary judgment stage Mr. Webb has not provided evidence to support his contention that NaphCare had a widespread practice of treating emergency and routine medical care alike. *See* Dkt. 76 ¶ 23. In *Cooper v. Whatcom County*, the district court found that there were sufficient disputes of material fact as to whether the defendant county could be liable under *Monell* because the plaintiff offered "evidence of other inmates who have died while in custody, allegedly after receiving inadequate medical care at the jail due to similar policies and practices." 650 F. Supp. 3d 1144, 1174 (W.D. Wash. 2023); *but see Estate of Hill*, 2023 WL 6297483, at *10 (explaining that proof of prior harm from an unconstitutional custom is not required (citing *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1073 n.7 (9th Cir. 2016))). Unlike the plaintiffs in *Cooper* or *Estate of Hill*, Mr. Webb has not offered any evidence establishing NaphCare had a policy or unwritten custom of delaying care for inmates with emergency medical needs. *See* Dkt. 88 at 10. He has therefore not shown any triable issues of fact as to whether NaphCare delayed his offsite appointment due to a custom, pattern, or practice for which it could be liable under *Monell*, and NaphCare is entitled to summary judgment. *See Gordon II*, 6 F.4th at 974 (affirming summary judgment for Defendant because Plaintiff had not "produce[d] evidence creating a triable issue of fact regarding the existence of an unconstitutional practice or custom").

## IV.  CONCLUSION

For the reasons explained above, the Court DENIES Mr. Webb's motion for voluntary dismissal (Dkt. 87) and GRANTS NaphCare's motion for summary judgment (Dkt. 88). The

ORDER DENYING PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 12th day of November, 2024.

Tiffany M. Cartwright
United States District Judge